UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL DIAMOND,

      Plaintiff

v.

GENESEE COUNTY LAND
BANK,

      Defendant.

Case No. 2:19-cv-12409
District Judge Linda V. Parker
Magistrate Judge Anthony P. Patti

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR INJUNCTIVE RELIEF (ECF No. 23) and GRANT DEFENDANT'S
DISPOSITIVE MOTION (ECF No. 55)**

**I.    RECOMMENDATION:** The Court should **DENY** Plaintiff's November
25, 2019 motion for injunctive relief (ECF No. 23) and **GRANT** Defendant's
February 25, 2020 dispositive motion (ECF No. 55).

**II.   REPORT:**

    **A.    Background**

        **1.    Diamond's state court lawsuit against GCLBA and others**

On November 10, 2014, Earl M. Diamond filed a lawsuit against Angela
Swain, Cornell Jones, Genesee County Land Bank Authority (GCLBA), and the
Genesee County Treasurer.  The case was closed on January 5, 2015, apparently
when the court granted GCLBA and Treasurer's motion for summary disposition,

1

although Diamond may have been engaged in settlement negotiations with Swain and Jones from February 2015 to January 2016.  *See* Case No. 14-103809-CH (Genesee County 7th Judicial Circuit Court).[1]

### 2.    GCLBA's state court lawsuits to terminate tenancy

GCLBA claims that it filed an eviction case in March 2019.  (ECF No. 55, PageID.175.)  The March 20, 2019 consent possession judgment notes that GCLBA "has a right to possession[,]" and explained, among other things, that an order of eviction "will be issued on or after [April 24, 2019] unless you move."  (ECF No. 55-1, PageID.205.)  Case No. C19G1909LT (Genesee County 67th District Court).  Perhaps because this document appears to have been signed by Earl Diamond, it is being referred to as a "consent judgment."

According to GCLBA, it "mistakenly sent an inapplicable 30-day notice to terminate tenancy to the address."  (ECF No. 55, PageID.175.)  On June 20, 2019, the GCLBA filed a complaint for termination of tenancy against unknown occupants, although the docket lists Earl Diamond as a cross-party Plaintiff.  A bench trial was conducted in June and July 2019, and, on July 24, 2019, the judge entered judgment and dismissed the case without prejudice.  From August 13-15, 2019, an order of eviction was entered, the motion to set aside default judgment

---

[1] (*See* http://www.co.genesee.mi.us/roaccsinq/default.aspx.)

2

was denied, and an order to stay proceedings was entered.  Case No. C19G4151LT

(Genesee County 67th District Court).[2]

### B.   Diamond's Instant Federal Lawsuit

#### 1.   The original complaint

On August 15, 2019, Diamond filed the instant lawsuit – in *federal* district

court – against the Genesee County Land Bank (GCLB).  (ECF No. 1; *see also*

ECF No. 5, PageID.14.)  Plaintiff's prayer for relief requests, among other things:

(a) $100,000; (b) replacement of personal property; (c) sale of 3115 Dale Avenue

to Plaintiff for $1.00, with the property brought up to code and all items repaired,

as well as a new furnace, air conditioner and hot water tank; (d) a car; (e) no more

litigation; (f) closure of the GLCBA; and (g) an award of legal fees and costs.

(ECF No. 1, PageID.6)  Plaintiff represents himself, and the Court has granted his

application to proceed without prepayment of fees or costs.  (ECF Nos. 2, 9.)

Shortly after Plaintiff filed the instant case in this Court, he apparently

submitted a complaint about the property to the City of Flint's Department of

Planning and Development, Building & Safety Inspection.  (ECF No. 5,

PageID.16.)  Then, on or about September 4, 2019, Diamond filed a complaint

with the State of Michigan Department of Civil Rights (MDCR) concerning

---

[2] (*See* http://www.co.genesee.mi.us/roawebinq.)

alleged July 24, 2019 housing discrimination, which is also the date of judgment in Case No. C19G4151LT (Genesee County 67th District Court).  (ECF. No. 5, PageID.15 [MDCR # 497676].)  The City of Flint issued a notice of violations based on an inspection that was conducted on September 20, 2019.  (ECF No. 55-1, PageID.201-202.)  The MDCR complaint was dismissed in December 2019. (ECF No. 55-1, PageID.207 [HUD # 051967958, MDCR # 497676].)

## 2.      The amended complaint

On September 16, 2019, Judge Parker entered an opinion and order requiring Plaintiff to file an amended complaint, wherein the Court provided Plaintiff with the following directions:

> . . . to the extent Plaintiff only is challenging a state court order, the Court would have to summarily dismiss his Complaint. Plaintiff, however, also refers to violations of his rights under the ADA and states that someone refused to sell him his home due to his color and disability. But Plaintiff does not identify his race, fails to allege any facts to enable the Court to determine how Defendant was involved, what Defendant did, or where and when this happened. To the extent Plaintiff is attempting to assert violations of his civil rights based on his disability or race—or any other claim besides an appeal of a state court decision—he must amend his Complaint to satisfy Rule 8(a)'s requirements.

(ECF No. 7.)

On September 26, 2019, Plaintiff filed an amended complaint, wherein he alleges that GCLB violated his civil rights.  (ECF No. 8, PageID.23.)  Plaintiff's claims stem from the events of March 20, 2019, which is also the date of the state

court consent possession judgment in Case No. C19G1909LT, and appear to

continue through the August 13, 2019 order of eviction in Case No. C19G4151LT.

(ECF No. 8, PageID.23-26.)  More specifically, Plaintiff's amended complaint

alleges the following:

- On March 20, 2019, GCLBA agreed to sell Diamond the subject property for $8,600 under a land contract, which was to be paid with Diamond's forthcoming Social Security Disability benefits; however, even though GCLBA agreed to put the terms in writing, mail them to Diamond, and come do an inspection, GCLBA "failed to do so," and "breached the agreement." (¶¶ 1, 2, 3.)

- Instead, GCLBA changed the terms, because of Diamond's color, race, age, disability & sex, and the aforementioned consent possession judgment was entered (*see* ECF No. 55-1, PageID.205); Diamond was subjected to discrimination in violation of the Elliott-Larsen Civil Rights Act (ELCRA) (Mich. Comp. Laws §§ 37.2101, *et seq.*), the ADA, the FHA, and, perhaps even the Age Discrimination Act of 1975. GCLBA never intended to sell Diamond the house and negotiated with him in bad faith "to get him to sign the consent agreement for possession in [GCLBA's] favor." (¶¶ 4 & 5.)

- Presumably relying upon 11 U.S.C. § 362, the March 20, 2019 consent possession judgment in C19G1909LT violated the stay created by his bankruptcy case filed on February 26, 2019 (Case No. 19-30433-dof), and the July 2019 actions in C19G4151LT violated the June 27, 2019 interim stay in another bankruptcy case (Case No. 19-31316-jda). (¶ 6.)

- Plaintiff was denied his right to due process in 67th District Court. (¶ 7.)

- Plaintiff's 5th Amendment rights were violated in Case No. C19G1909LT and/or C19G4151LT, as the 67th District Court

"allowed the case to be heard twice," and did not permit Plaintiff "to be heard at the Motion hearing to set aside Judgment[,]" yet, Judge Crawford denied the motion.  (¶ 8.)

- Genesee County 7th Circuit Court permitted fraud when it allowed GCBLA to have a hearing and enter judgment, each without serving Plaintiff, and Case No. 14-103809-CH violated his due process rights.  (¶ 9.)

- Judge Crawford said Diamond could sue for breach of agreement.  (¶ 10.)

- GCLBA discriminated against him, in violation of his civil rights and the ADA.  (¶ 11.)

- Plaintiff's rights under the ADA were violated when the 67th District Court refused his health and disability-based request(s) for accommodation, such as the August 13, 2019 request to reschedule "so he could seek emergency medical treatment."  (¶ 12.)

(ECF No. 8, PageID.23-28.)  Plaintiff appears to claim that he was evicted on August 19, 2019.  (ECF No. 8, PageID.26 ¶ 5; *see also* ECF No. 23, PageID.73, 77.)  Importantly, Plaintiff also seems to characterize the initiation of this lawsuit as a continuation of his state court case.  (ECF No. 8, PageID.28-29 ¶ 13.)

On October 28, 2019, GCLBA filed an answer and affirmative defenses, among which are challenges based on Fed. Rules Civ. P. 8, 11 and 12, jurisdiction, and Michigan's Statute of Frauds.  (ECF No. 13, PageID.42-43 ¶¶ 1-4.)

## C.   The January 2020 Hearing & Related Order

Judge Parker referred this case to me for pretrial matters.  On January 9, 2020, I held a combined scheduling conference and motion hearing, at which

Plaintiff did not appear.  (*See* ECF Nos. 35, 36, 42.)  Among other things, I took

Plaintiff's November 25, 2019 motion under advisement.  (*See* ECF No. 48,

PageID.148-149.)

My post-hearing, January 13, 2020 order accomplished several tasks.  It

directed the Clerk of the Court to strike 12 items from the record and denied

Plaintiff's motion regarding defense counsel's legal fees and costs.  (ECF No. 48,

PageID.149-150.)  Importantly, the order also set forth certain case management

deadlines and provided special instructions for *pro se* litigants.  (*Id*., PageID.151-

152.)[3]

### D.    Discussion of Dispositive Matters

### 1.    This Court has subject matter jurisdiction over Plaintiff's *federal* statutory and *federal* constitutional claims.

"Federal courts are courts of limited jurisdiction.  They possess only that

power authorized by Constitution and statute . . . ."  *Kokkonen v. Guardian Life

Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)  Federal district courts have original

jurisdiction over many types of cases, including those involving a federal question

(28 U.S.C. § 1331), diversity of citizenship, which also satisfy an amount in

---

[3] Plaintiff's non-appearance at the January 9, 2020 hearing and items returned to the Court as undeliverable are discussed in the Court's order entered simultaneously with this report and recommendation.  (*See*, *e.g.*, ECF No. 52, 53, 63, 66.)

controversy (28 U.S.C. §§ 1332), and the United States as a party (28 U.S.C. §§ 1345-1346).  (*See also* ECF No. 1, PageID.8; 28 U.S.C. §§ 1330-1369.)

When Plaintiff initiated this case in August 2019, he asserted that jurisdiction was based on "federal question."  (ECF No. 1, PageID.8 [Civil Cover Sheet].)  *See also* Fed. R. Civ. P. 8(a)(1) (requiring a pleading to contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support[.]").  This Court's jurisdiction over Plaintiff's federal statutory and federal constitutional claims is consistent with 28 U.S.C. § 1331 ("Federal question") ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Plaintiff's amended complaint includes alleged violations of, *inter alia*, the Americans with Disabilities Act (ADA), the Fair Housing Act (FHA) and perhaps even the Fourteenth Amendment procedural due process clause.  (ECF No. 8.)  Thus, this Court's jurisdiction over any such claims is also consistent with 28 U.S.C. § 1331.  In fact, Diamond acknowledges that this Court has jurisdiction over such matters.  (*See* ECF No. 23, PageID.74.)

> **2.    This Court does not have subject matter jurisdiction to review the 67th District Court's decision, which is sought by his motion for injunctive relief (ECF No. 23).**

In November 2019, Plaintiff filed a motion for preliminary injunction, whereby he seems to seek: (1) a stay of and relief from the 67th District Court's August 2019 order for eviction; (2) return of the subject property; and, (3) return or replacement of personal property. (ECF No. 23, PageID.71.) GCLBA's December 9, 2019 response explains that "Plaintiff has no known recorded interest in the title to the subject property[,]" "there is no known writing agreeing to transfer to him any interest in the property[,]" and "he [does not] have any known leasehold rights." (ECF No. 31, PageID.100.)

Plaintiff has also filed a "Part II" to his motion for injunctive relief, wherein he requests a stay of execution under 42 U.S.C. § 3613 of the FHA. (ECF No. 32, PageID.102.) Presumably based on the events of March 2019 to July 2019, Plaintiff also claims that GCLBA has violated 42 U.S.C. § 3604 of the FHA, which concerns "[d]iscrimination in the sale or rental of housing and other prohibited practices[,]" and the ADA, in addition to considering his age. (*Id.*, PageID.102-103.) Plaintiff's prayer for relief requests, *inter alia*, return and repair of the real property in question, return / replacement of personal property, and monetary damages. (*Id.*, PageID.103 ¶¶ 1-4.) Also, in an apparently related supplemental filing, Plaintiff claims that GCLBA is attempting to sell the subject property or its lot to a white family, seemingly the one living across the street at 3120 Dale Ave. who has allegedly already purchased the property at 3119 Dale Ave, which is next

door to 3115 Dale Ave.  (ECF No. 34, PageID.108.)  Plaintiff believes that this is why he was evicted from 3115 Dale Ave. and contends that GCLBA would not sell it to him because he is Black.  (*Id*.)

Although Plaintiff's motions for preliminary injunction seek various forms of relief, each of them seeks a stay of and relief from the state court's eviction order (ECF Nos. 23, 32), presumably the August 13, 2019 order of eviction in Case No. C19G4151LT.  As will be further discussed below, this Court does not have subject matter jurisdiction to review state court decisions (Section D.2.c) and the Michigan Statute of Frauds requires an interest in real property to be attested to in writing by the party granting the interest, Mich. Comp. Laws § 566.106 (Section D.3.c.i).

> ### a.  This case was not removed from state court (28 U.S.C. §§ 1441-1455).

Plaintiff's impression that he can seek such relief in this Court stems from his characterization of this lawsuit as an "Appeal" and his description of the parties as "Plaintiff/Appellant" and "Defendant/Appellee."  (*See*, *e.g.*, *id.*, PageID.71.)  By way of background, when he filed this case, Plaintiff mistakenly characterized the origin of this case as "removed from state court."  (ECF No. 1, PageID.8 [Civil Cover Sheet].)  *This case was not originally filed in state court and then removed to federal court* pursuant to 28 U.S.C. §§ 1441 ("Removal of Civil Actions"), 1446 ("Procedure for Removal of Civil Actions").  (ECF No. 23, PageID.71-72, 75, 77-

78.)  Instead, Plaintiff's instant lawsuit is an "original proceeding," *i.e.*, it was

originally filed in this Court.

> **b.     If Plaintiff sought to stay the execution of the state
> district court eviction order, then he should have filed
> an appeal in Genesee County's 7th Circuit Court.**

Plaintiff's mischaracterization of this case as "removed from state court"

sheds light on his request for injunctive relief.  He requests a stay of execution of

the August 13, 2019 order of eviction, suggesting that it should not have been

executed in light of his appeal - presumably a reference to the instant case, which

was initiated by a complaint dated August 13, 2019 and filed in this Court on

August 15, 2019 – and/or the 67th district court's August 15, 2019 order to stay

proceedings.  (ECF No. 23, PageID.71; *see also* ECF No. 32, PageID.102-103.)

According to Plaintiff, 67th District Court Judge Crawford informed Plaintiff

"that he could file an injunction with the court he appeals to."  (ECF No. 23,

PageID.71.)  Plaintiff claims that he "filed an appeal on [August 14, 2019] in US

Dist Court."  (*Id*., PageID.73.)  Summarizing the outline of Plaintiff's arguments,

he seems to contend that:

> (A)     this Court had jurisdiction before the judgment was executed,
> i.e., his August or 19, 2019 eviction;

> (B)     the August 18 or 19, 2019 eviction occurred after Plaintiff's
> timely appeal, for which Plaintiff seems to refer to M.C.R.
> 7.104, a state court procedural rule ("Filing Appeal of Right");

(C)     Judge Crawford violated Plaintiff's due process rights by
        signing the August 13, 2019 order of eviction before the August
        14, 2019 hearing on Diamond's August 2, 2019 motion to set
        aside the July 24, 2019 judgment;

(D)     GCLBA has destroyed evidence that supports Plaintiff's case;
        and,

(E)     Plaintiff has suffered irreparable harm and GCLBA has taken
        an unfair, unjust advantage, in each case noting that he was not
        named in Genesee County 67th District Court Case Nos.
        C19G1909LT, C19G4151LT or in the writ of eviction.

(ECF No. 23, PageID.73-76; *see also id.*, PageID. 77-78.)  Plaintiff sets forth

detailed requests for relief.  (ECF No. 23, PageID.78-79 ¶¶ 1-8.)  Plaintiff's reply

makes clear that he is attempting to appeal the July 24, 2019 judgment and/or

August 2019 order for eviction in state district court Case No. C19G4151LT.

(ECF No. 51, PageID.161.)

        However, Plaintiff appears to conflate a state court appeal of the 67th District

Court's order of eviction with his instant, August 15, 2019 complaint filed in the

U.S. District Court for the E.D. Mich.  (*See*, *e.g.*, ECF No. 23, PageID.73.)

"Appeals from the district court shall be to the circuit court in the county in which

the judgment is rendered."  Mich. Comp. Laws §§ 600.8342(a)(1).  If Plaintiff

sought to appeal the 67th District Court's August 13, 2019 order of eviction (Case

C19G4151LT), then his recourse was to file an appeal in Genesee County's 7th

Circuit Court.

       **c.**     **This Court lacks jurisdiction to stay execution of the state district court order.**

Moreover, to the extent Plaintiff has come to this Court to seek reversal of the state court order of eviction, the *Rooker-Feldman* Doctrine prevents this Court from considering such an "appeal." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) ("That doctrine, a combination of the abstention and res judicata doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court."). Pursuant to the *Rooker-Feldman* doctrine, "lower federal courts lack subject matter jurisdiction to review the decisions of state courts." *Givens v. Homecomings Fin.*, 278 F. App'x 607, 608–609 (6th Cir. 2008). In fact, Judge Parker pointed to the *Rooker-Feldman* cases when directing Plaintiff to file an amended complaint. (ECF No. 7, PageID.21.) (*See also* ECF No. 31, PageID.100.)

In his reply, Plaintiff suggests that service of his amended complaint and summons upon GCLBA, followed by GCLBA's answer, means that GCLBA "willingly gave the court jurisdiction." (ECF No. 51, PageID.161.) However, GCLBA's appearance in this case does not bar GCLBA from challenging Plaintiff's pleading for its alleged lack of subject matter jurisdiction. Fed. Rules Civ. P. 4, 8(b), 12(b)(1).

       **d.**     **This jurisdictional issue is not resolved by Plaintiff's bankruptcy proceeding or related appeal.**

Plaintiff claims to have completed Official Bankruptcy Form 101A ("Initial Statement About an Eviction Judgment Against You") and Official Bankruptcy Form 101B ("Statement About Payment of an Eviction Judgment Against You"). (ECF No. 51, PageID.162.)  Also, he seems to claim that, based on his May 2019 filing of *In re Diamond*, Case No. 19-31316-jda (E.D. Mich. Bankr.), GCLBA's June 20, 2019 initiation of Case No. C19G4151LT was barred by 11 U.S.C. § 362 ("Automatic stay").  (ECF No. 51, PageID.162.)   According to Diamond, GCLBA did not file a written objection to the forms or the automatic stay.  (*Id*.)  Plaintiff wants the Court to "enforce his rights that were violated . . . [,]" and to restore him and his property back to the way they were on March 20, 2019, *i.e.*, the date of the state court consent possession judgment in Case No. C19G1909LT.  (*Id*.)

On June 27, 2019, U.S. Bankruptcy Judge Applebaum entered an interim order granting debtor's motion to impose automatic stay and setting expedited hearing on debtor's motion.  (*See* Case No. 19-31316-jda (E.D. Mich. Bankr.), ECF No. 42.)  On July 17, 2019, Judge Applebaum entered an order vacating the interim order and lifting the automatic stay.  (*Id*., ECF No. 52).  On September 4, 2019, Judge Applebaum signed an order denying Diamond's motion to set aside that order.  (*Id*., ECF No. 70.)  Days later, Plaintiff filed a bankruptcy appeal with this Court, *In re Diamond*, 5:19-cv-12694-JEL-MJH (E.D. Mich.), which was the proper method of challenging it.  Thus, any challenge Plaintiff has to the

14

"automatic stay" determination is more properly the subject of his bankruptcy appeal, not the case at bar.

### e. Summation

For the reasons stated above, this Court does not have jurisdiction to review the 67th District Court's decisions, such as the August 2019 order of eviction as to which Plaintiff seeks a stay and from which he seeks relief. The Court assumes that the execution of that order fueled Plaintiff's requests for return of the subject property and return or replacement of personal property. Given this Court's lack of jurisdiction over the primary, injunctive relief that Plaintiff seeks, his November 25, 2019 motion (ECF No. 23) should be denied.[4]

### 3. The Court should grant Defendant's February 25, 2020 dispositive motion (ECF No. 55).

### a. There are multiple instances of failure to comply with the Fed. Rules of Civ. P. or this Court's Local Rules.

GCLBA seeks dismissal pursuant to Fed. R. Civ. P. 41(b), which permits a defendant to move for dismissal of an action or any claim against it "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order[.]" (ECF No. 55, PageID.183-185.) Although Rule 41(b) is not the basis for the recommendation herein, Plaintiff's noncompliance with certain rules provides a helpful background to the issues before the Court.

Plaintiff's amended complaint (ECF No. 8) does not comply with at least two Federal Rules of Civil Procedure.  For one thing, "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."  Fed. R. Civ. P. 11(a).  Although Plaintiff signed the corresponding "proof of service," Plaintiff did not sign his amended complaint (ECF No. 8), and he does not seem to have corrected this omission once GCLBA's answer pointed it out (ECF No. 13, PageID.42).  Also, Judge Parker's September 16, 2019 order expressly noted that "must amend his Complaint to satisfy Rule 8(a)'s requirements."  (ECF No. 7, PageID.22.)  The Court presumes that "federal question" provides the jurisdictional grounds for Plaintiff's amended complaint, as it did for Plaintiff's original complaint.  *See* 28 U.S.C. § 1331, Fed. R. Civ. P. 8(a)(1).  However, temporarily setting aside whether the amended complaint provides "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), the amended complaint's thirteen numbered sections do not appear to contain "a demand for the relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a)(3).  (*See* ECF No. 8, PageID.23-29.)

Moreover, other filings illustrate Plaintiff's non-compliance with the rules. Setting aside the reasons for Plaintiff's 12 previously stricken filings, which are set forth in the Court's January 13, 2020 order (ECF No. 48, PageID.149-150), the

Undersigned enters an order this date to strike several other filings (ECF Nos. 54, 56, 57, 58, 59, 64, 65), one as an improper motion and the others as non-compliant with Fed. R. Civ. P. 11(a). The same order describes Plaintiff's address of record as unreliable and points Plaintiff's attention to E.D. Mich. LR 11.2 ("Failure to Provide Notification of Change of Address").

Finally, whether Plaintiff realizes it or not, movants are required to seek concurrence in motions and requests. E.D. Mich. LR 7.1(a). *See also* Fed. R. Civ. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). Plaintiff's November 18, 2019 email, seemingly a response to defense counsel's same-day effort to discuss a joint discovery plan, states, *inter alia*, "I will never call you[,] so don't call me[,]" "I only speak on the court record[,]" "I'm not working with yall racist people . . . [,]" "that's how we got to this point[,]" and, "I'll take my chances with the MJ, and the Judge." (ECF No. 55, PageID. 180ECF No. 55-1, PageID.209.) This illustrates Plaintiff's unwillingness to comply with facilitative discussion expected of parties appearing before this Court. Indeed, the comments to LR 7.1 explain that "[a]ttempts to circumvent the LR in any way may be considered an abusive practice which may result in the motion or response being stricken as well as sanctions being imposed under LR 11.1[,]" which concerns

"Sanctions for Non-Compliance with Local Rules."[5]  *See also* Fed. R. Civ. P. 11(c)

("Sanctions.").

As set forth above, Plaintiff has often failed to comply with the Federal

Rules of Civil Procedure and the Local Rules of this Court, all of which lends

support to Defendant's claim that it is prejudiced – *e.g.*, the costs to "review and

respond to his nonsensical pleadings" and "attend court when Mr. Diamond does

not" – by Plaintiff's actions.  (*Id.*, PageID.185.)

> **b.      Plaintiff's claims attacking the 67th District Court's decisions should be dismissed for lack of subject matter jurisdiction.**

At the outset of his amended complaint, Plaintiff claims that GCLBA

violated his civil rights on March 20, 2019 (the date of the consent possession

judgment in C19G1909LT), on various dates from June 26, 2019 to August 14,

2019 (seemingly for occurrences in C19G4151LT), and on other dates.  (ECF No.

8, PageID.23.)  To the extent Plaintiff characterizes this lawsuit as a continuation

of his state court case (ECF No. 8, PageID.28-29 ¶ 13), there are no such direct

appeals from state district court to federal district court.  Instead, Michigan Court

Rules provide for appeals to the state circuit court (M.C.R. 7.101, et seq.) the state

---

[5] (*See* http://www.mied.uscourts.gov/PDFFIles/localRulesPackage.pdf (last visited May 13, 2020).)

court of appeals (M.C.R. 7.201, et seq.), and the state supreme court (M.C.R. 7.301, et seq.).

Consistent with the foregoing discussion of Plaintiff's injunctive relief motion, this Court does not have subject matter jurisdiction to review state court decisions. Therefore, the Court should grant GCLBA's motion to the extent it seeks dismissal under Fed. R. Civ. P. 12(b)(1) of Plaintiff's claims attacking the 67th District Court decisions. (ECF No. 55, PageID.185.)[6]

   c.   **Plaintiff's breach of contract and fraud claims against GCLBA fail to state a claim upon which relief may be granted.**

GCLBA argues that Plaintiff's amended complaint should be dismissed for "failure to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6). (ECF No. 55, PageID.186-188.) "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

---

[6] Plaintiff's amended complaint makes several allegations about the 67th District Court and/or Judge Crawford. (*See*, *i.e.*, ¶¶ 6, 7, 8, 9, 10, 12.) Not only are the 67th District Court and Judge Crawford not Defendants in this case, but also Judge Crawford would be entitled to judicial immunity as to judicial actions taken with jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Obviously, if there were claims against non-parties or claims against Judge Crawford for which he is judicially immune, such claims would be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (*Id.* (internal citations and footnote omitted).) Pleading requires "only enough facts to state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### i.    Breach of contract

As for Plaintiff's claims against GCLBA (the only Defendant in this case), GCLBA correctly points out that:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance *in writing*, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

Mich. Comp. Laws § 566.106 (emphases added). (ECF No. 55, PageID.187.) Plaintiff's complaint admits the alleged March 20, 2019 agreement to purchase 3115 Dale Ave. was not reduced to written form. Accordingly, Plaintiff's state law breach of contract claim (¶¶ 1, 2, 3) fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

### ii.    Fraud

To the extent Plaintiff claims that GCLBA never intended to sell him the house, negotiated in bad faith and/or tricked him into signing the March 20, 2019 consent possession judgment (¶¶ 4, 5), he seems to allege some type of common law "fraud" claim.

"To show fraud or misrepresentation, plaintiffs must prove: (1) defendants made a material misrepresentation; (2) it was false; (3) when defendants made it, defendants knew that it was false or made recklessly without knowledge of its truth or falsity; (4) defendants made it with the intent that plaintiffs would act upon it; (5) plaintiffs acted in reliance upon it; and (6) plaintiffs suffered damage." *Arim v. Gen. Motors Corp.*, 206 Mich. App. 178, 195, 520 N.W.2d 695, 702 (1994) (citing *Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976).   .

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *see also* M.C.R. 2.112(B).  "The Sixth Circuit Court of Appeals has interpreted Rule 9(b) to require plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Williams v.*

*State Farm Ins. Co.*, 781 F. Supp. 2d 519, 524 (E.D. Mich. 2011) (quoting *Yuhasz*

*v. Brush Wellman, Inc.,* 341 F.3d 559 (6th Cir.2003)).

Perhaps Plaintiff is trying to allege that, at the time of the March 20, 2019

consent possession judgment, GCLBA agreed to let him apply to purchase the

property, notwithstanding entry of the consent judgment.  However, even assuming

that GCLBA orally agreed to let Plaintiff purchase the property, "establishing a

claim of fraudulent misrepresentation requires the plaintiff's *reasonable* reliance

upon the false representation."  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1101 (6th

Cir. 2010) (emphasis added) (citing *Cummins v. Robinson Twp.,* 283 Mich. App.

677, 770 N.W.2d 421, 435 (2009)).  "[A] person who *unreasonably* relies on false

statements should not be entitled to damages for misrepresentation." *Novak v.*

*Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 690, 599 N.W.2d 546, 554 (1999).

Considering Mich. Comp. Laws § 566.106, Plaintiff's reliance on any such oral

agreement with GCLBA for the sale of 3115 Dale Ave. would have been

unreasonable.  *See*, *e.g.*, *Wal-Mart Real Estate Bus. Tr. v. Eastwood, LLC*, No.

1:13-CV-1348, 2014 WL 12637935, at *12 (W.D. Mich. Aug. 22, 2014) ("it was

unreasonable for Eastwood to rely on the alleged oral statements because

agreements related to real property, including leases, fall within the statute of

frauds.").

### iii.    Civil rights

Plaintiff's remaining claims against GCLBA concern alleged violations of his civil rights, presumably synonymous with his claims of discrimination based on his color, race, age, disability, and sex.  (ECF No. 8, PageID.24-26, 28 ¶¶ 4, 5, 11.) Yet, these claims are lacking in the following ways:

1.    Although Plaintiff identifies himself as "a disabled Black Man," (ECF No. 8, PageID.25 ¶ 4), his age and disability are unclear. Thus, any claim for age and disability discrimination is conclusory.[7]

2.    Plaintiff pleads that "I believe the defendant looked at the color of (my) plaintiffs [sic] skin[,] my his [sic] race, age, and His disability . . ." and sex – in addition to his "disability payment" – when refusing to enter into an agreement with him (ECF No. 8, PageID.25 ¶¶ 4, 4a); however, even if GCLBA changed its mind once its attorney arrived, that it did so based on Plaintiff's color, race, age, disability and/or sex is "speculative."  Plaintiff provides no supporting facts for this conjecture.  It is also unclear how consideration of a "disability payment" runs afoul

---

[7] As Judge Parked noted in her September 16, 2019 order, which concerned Plaintiff's original complaint:  "Plaintiff does not identify his race, fails to allege any facts to enable the Court to determine how Defendant was involved, what Defendant did, or where and when this happened.  To the extent Plaintiff is attempting to assert violations of his civil rights based on his disability or race—or any other claim besides an appeal of a state court decision—he must amend his Complaint to satisfy Rule 8(a)'s requirements."  (ECF No. 7, PageID.22.)  *See also, e.g., Edoho-Eket v. RH, Restoration Hardware Inc.*, No. 3:18-CV-1327, 2019 WL 758617, at *4 (M.D. Tenn. Jan. 16, 2019) (recommending that the Court grant the Rule 12(b)(6) motion where Plaintiff "failed to describe in any detail the factual predicates supporting her claim of discrimination in housing[,]" and "alleged no facts that could give rise to the inference that the Defendant discriminated against Plaintiff under the Fair Housing Act[.]"), *report and recommendation adopted*, No. 3:18-CV-01327, 2019 WL 699119 (M.D. Tenn. Feb. 20, 2019).

of the law; in fact, it may be quite relevant to determine a
person's ability to make payment on a purchase agreement.

3.   Plaintiff claims that GCLBA refused to sell him the adjacent
property at 3119 Dale Ave. in 2016 for $75 (presumably
because 3115 Dale Ave. was in foreclosure, although Diamond
contends that he was not in foreclosure) and instead sold 3119
Dale Ave. to a white female for $100.  (ECF No. 8, PageID.26
¶ 5; *see also* ECF No. 34, PageID.108.)  Yet, if this is the basis
for Plaintiff's race, color and sex discrimination claims, it refers
to property that is not the subject of Plaintiff's present lawsuit
and, even if true, would be simply "speculative" as to 3115
Dale Ave.

4.   While the Court understands Plaintiff's claim that "[t]his is not
a landlord tenant case[,]" his claims that "defendant
discriminated against the plaintiff," and "violated his Civil
Right, ADA[,]" (ECF No. 8, PageID.28 ¶ 11), are conclusory.

*See Twombly*, 550 U.S. at 555.  These claims "do not allow the Court to infer any

more than a mere possibility of misconduct—if that[,]" or "are . . . bare legal

conclusions."  (ECF No. 55, PageID.187, 188.)

Also conclusory are Plaintiff's allegations that GCLBA discriminated

against him in violation of the ELCRA, ADA and FHA, each of which is made up

of several sections.  *See* Mich. Comp. Laws §§ 37.2101, et seq. (ELCRA), 42

U.S.C. §§ 12101-12213 (ADA), and 42 U.S.C. §§ 3601-3619 (FHA).  Looking at

Plaintiff's *operative pleading* (ECF No. 8), the Court is left to guess whether

Plaintiff's claims are based upon, *e.g.*, the ELCRA's public accommodations and

services sections (§§ 37.2301-37.2304) or its housing sections (§§ 37.2501-

37.2507), the ADA's public services-based sections (such as 42 U.S.C. §§ 12132,

24

12182), or the FHA's section concerning "Discrimination in the sale or rental of housing and other prohibited practices[,]" 42 U.S.C. § 3604.

It may be that Plaintiff's other filings – and there are 38 beyond the amended complaint and his apparent response – offer clarity. (*See*, *e.g.*, ECF No. 32, PageID.102-103 (citing 42 U.S.C. §§ 3604, 3613 of the FHA).) Yet, "the paramount policies embodied in the well-pleaded complaint rule" include that "the plaintiff is the master of the complaint," and that "a federal question must appear on the face of the complaint . . . ." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–399 (1987). To the extent Plaintiff's claims against GCLBA are based on the FHA, the ELCRA, or the ADA, the Court cannot be expected to seek clarification of such claims by examining Plaintiff's other filings. The bases of his claims must be clear in the operative pleading.

Still, notwithstanding the conclusory and speculative nature of Plaintiff's civil rights claims against GCLBA, or the fact that Plaintiff's operative pleading (ECF No. 8) leaves the Court to guess which portion of the ELCRA, ADA or FHA was allegedly violated by GCLBA, the Court is mindful of the liberal pleading standard and Plaintiff's *pro se* status. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]"). Given the Undersigned's sense of the

intended civil rights claims, this report assumes, *arguendo*, that Plaintiff's civil

rights claims have passed *Twombly*'s test.

> **d.    As to Plaintiff's civil rights claims, the Court should grant GCLBA's motion for summary judgment.**

Finally, GCLBA argues that it is entitled to summary judgment in its favor.

(ECF No. 55, PageID.188-191.)  Among other things, GCLBA contends that the

property was "not available for sale to anybody[,]" and "if it was sellable, Mr.

Diamond did not properly apply to buy it."  (ECF No. 55, PageID.190-191, ECF

No. 55-1, PageID.199-200 [Bickford Affid.].)

"The court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  In support of its motion, GCLBA

provides:

- A February 11, 2020 affidavit to establish that title searches, one as recent as February 2020, reveal that Plaintiff did not have a recorded interest in the subject parcel on record with the Genesee County Register of Deeds.  (ECF No. 55-1, PageID.196 ¶¶ 5-7 [Exhibit 1].)

- A February 20, 2020 affidavit to establish that it acquired the subject property in December 2018 from the Genesee County Treasurer following a 2018 tax foreclosure.  (ECF No. 55-1, PageID.199-200 ¶ 5 [Bickford Affid.].)  The same affidavit represents that, "[c]onsistent with [GCLBA] guidelines, the subject property was not sold to Mr. Diamond or anybody else because of its bad condition[,]" and that "Mr. Diamond does not qualify to purchase any property from [GCLBA] because he has not met the first requirement of any potential buyer,

pursuant to general [GCLBA] guidelines, to provide the necessary documentation or information for evaluation by the sales staff." (ECF No. 55-1, PageID.199-200 ¶ 12 [Bickford Affid.].)

- The March 20, 2019 state court consent possession judgment, which notes that GCLBA "has a right to possession[,]" and explains, among other things, that an order of eviction "will be issued on or after [April 24, 2019] unless you move." Case No. C19G1909LT (ECF No. 55-1, PageID.205 [Exhibit 3].)

(ECF No. 55, PageID.189-191.)

In his operative pleading, Plaintiff seems to allege that his failure to apply to purchase the property from GCLBA is distinct from the agreement he allegedly reached with GCLBA on March 20, 2019, *i.e.*, "the original consent judgment." (ECF No. 8, PageID.26 ¶ 5.) However, if Plaintiff's claim is based on something other than GCLBA's denial of a properly submitted application – such as a breach of an alleged March 20, 2019 oral agreement – as discussed above, Plaintiff admits that the alleged March 20, 2019 agreement to purchase 3115 Dale Ave. was not reduced to written form (*see, e.g.*, ECF No. 8, PageID.24-26), and Plaintiff's reliance on any such oral agreement with GCLBA for the sale of 3115 Dale Ave. would have been unreasonable.

More to the point, Plaintiff has not adequately refuted Defendant GCLBA's motion to the extent it sought summary judgment based on Fed. R. Civ. P. 56. (ECF No. 55, PageID.173, 176, 188-192.) GCLBA supports its Rule 56 motion with, *inter alia*, two affidavits and a copy of the March 20, 2019 consent

possession judgment.  (ECF No. 55, PageID.195-205.)  As set forth above, the

affidavits establish that Plaintiff did not have a recorded interest in 3115 Dale

Ave., Defendant GCLBA acquired the subject property in December 2018, it was

not sold to Plaintiff or anyone else, and Plaintiff did not qualify to purchase the

property (because he did not provide the necessary documentation or information).

Although Plaintiff's original complaint concludes with a Fed. R. Civ. P. 11

certification (ECF No. 1, PageID.6), his operative pleading does not conclude with

a similar statement, and it does not appear to be a 28 U.S.C. § 1746 unsworn

declaration under penalty of perjury.  (*See* ECF No. 8, PageID.29.)  Also, in what

seems to be a 1-page response to GCLBA's motion, Plaintiff quotes 42 U.S.C. §

3604(a),(f) of the FHA.  (ECF No. 62, PageID.228.)  He also explains that he will

not dismiss this case, is homeless, is living on the streets or hotels or motels or

shelters, and has lost everything.  (*Id*.)

To be sure, the Court sympathizes with this plight, especially during the

present pandemic.  Nonetheless, neither the operative pleading nor the apparent

response constitutes evidence that refutes GCLBA's arguments that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).[8]  In sum, while GCLBA has supported its

---

[8] On March 2, 2020, Plaintiff mailed a three-page document, which was filed on
March 10, 2020 and is titled "Statement of Issues CV."  (ECF No. 64, PageID.233-
235.)  Even if Plaintiff intended this filing as a supplemental response:  (a) it is

factual positions, Plaintiff has not, Fed. R. Civ. P. 56(c)(1), and Plaintiff has not

adequately alleged that "facts are unavailable" to him, Fed. R. Civ. P. 56(d).[9]

### 4.    Conclusion

In sum, the Court should **DENY** Plaintiff's November 25, 2019 motion for

injunctive relief (ECF No. 23) for the reasons discussed in Section D.2.  Moreover,

as explained in Section D.3, the Court should **GRANT** Defendant's February 25,

2020 dispositive motion (ECF No. 55), because the Court does not have subject

matter jurisdiction over Plaintiff's claims attacking the 67th District Court's

decisions (Fed. R. Civ. P. 12(b)(1)), Plaintiff's breach of contract and fraud claims

against GCLBA fail to state a claim upon which relief may be granted (Rule

12(b)(6)), and GCLBA is entitled to summary judgment on Plaintiff's civil rights

claims against it (Rule 56).

---

among the seven items stricken from the record by an order separate order entered
this date; and, (b) in any event, while it delineates 50 issues and cites non-
compliance with a state court rule, M.C.R. 3.223 ("Summary Proceeding for Entry
of Consent Judgment or Order"), it is not a sworn statement.

[9] In Plaintiff's motion for injunctive relief, Plaintiff alleges that GCLBA "has
destroyed evidence that supports case[,]" perhaps at or around the time of eviction.
(ECF No. 23, PageID.72, 76.)  Yet, Plaintiff signed only the proof of service.  (*Id*.,
PageID.79.)  Therefore, it is not an "affidavit or declaration," which shows that
Plaintiff "cannot present facts essential to justify" opposition to GCLBA's motion
for summary judgment.  Fed. R. Civ. P. 56(d).  Moreover, Plaintiff's one-
paragraph explanation does not describe the "key information vital to this case,"
nor does it describe or how the "[k]ey evidence [would] prove discrimination . . .
[,]" *i.e.*, how it would have helped him to overcome GCLBA's motion for
summary judgment.  (*See id*., PageID.76.)

### III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).   Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).   Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*   Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.   Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.   Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).   The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

30

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: June 25, 2020                    s/*Anthony P. Patti*
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE